UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY JOHNSON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:15-cv-02036-RDP |
| CITY OF HOMEWOOD, et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on: (1) the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants City of Homewood, Doug Finch, and Ted Springfield (Doc. # 46), (2) the Motion to Strike filed by the City, Finch, and Springfield, (3) the Motion to Dismiss filed by Defendant Jefferson County District Attorney's Office (Doc. # 60), and (4) Plaintiff's Motion for Ex Parte Hearing (Doc. # 64). The motions are fully briefed and under submission. (*See* Docs. # 47, 51, 53, 76-77, 79).

**I.     Background**

   **A.     Allegations in the First Amended Complaint**

According to Plaintiff's First Amended Complaint, on October 26, 2013, Defendant Springfield, an officer of the Homewood Police Department, knocked on her door and questioned her about complaints she had made to the Homewood Police Department about a dog. (Doc. # 45 at ¶¶ 4, 15). Plaintiff confirmed that she had complained about the dog, after which Springfield informed her that someone had attempted to kill the dog. (*Id.* at ¶¶ 15-16). Springfield told Plaintiff that she was his "only suspect" and that he had found "a bowl full of rat

poison by your tree in plain view in your yard." (*Id.* at ¶ 16). Springfield then seized a bowl in Plaintiff's front yard, which was situated above the line of sight from the street and approximately 27 feet from the street. (*Id.* at ¶ 18). As Springfield seized the bowl, Plaintiff observed that the bowl was clean and shiny. (*Id.* at ¶ 19). Plaintiff searched her property and found no traces of poison in the yard. (*Id.* at ¶ 20). But, she discovered that Springfield had searched her back porch and moved many items on the porch. (*Id.*).

Plaintiff reported the search of her back porch and Springfield's "other inappropriate behavior" to the Homewood Police Department, but claims the Police Department refused to investigate her complaint against Springfield. (*Id.* at ¶¶ 21-22). According to Plaintiff, the Police Department also refused to investigate her complaint that someone attempted to poison her dog by placing the bowl in her yard. (*Id.* at ¶ 22). On October 26, 2013, Defendant Springfield submitted a report averring that Plaintiff had complained about the dog that had been poisoned. (*Id.* at ¶ 23). Springfield reported that he saw a bowl on Plaintiff's property in plain sight from the road that contained "a green pellet which resembles rat poison." (*Id.* at ¶ 28). Springfield also described the contents of the bowl as an "anti-freeze, rat poison and dog food mixture." (*Id.* at ¶ 29). Plaintiff alleges that Springfield failed to canvass the neighborhood to determine whether other neighbors had used rat poison or whether other neighbors had spilled antifreeze. (*Id.* at ¶¶ 32-33).

On November 6, 2013, Defendant Finch, an officer of the Homewood Police Department, wrote a supplemental police report of the poisoning incident. (*Id.* at ¶¶ 5, 34). Plaintiff claims that Finch's report was inconsistent with Springfield's report because it recounted that the bowl contained "green residue similar to anti-freeze and a pellet similar to rat poison." (*Id.* at ¶ 35). Moreover, Plaintiff claims that the officers lacked "clear substantive evidence" that the dog had

2

been poisoned because no autopsy was performed after the dog had been euthanized. (*Id.* at ¶¶ 43-44).

On November 8, 2013, Homewood police officers attempted to arrest Plaintiff pursuant to an arrest warrant. (*Id.* at ¶ 45). On November 9, 2013, Defendant Springfield interviewed Plaintiff's neighbors about the incident, during which Plaintiff alleges that Springfield slandered and defamed her. (*Id.* at ¶ 47). That same day, Springfield stopped Plaintiff's friend after she travelled to Plaintiff's home and told that friend that he intended to prosecute Plaintiff because "she tried to get me in trouble." (*Id.* at ¶¶ 50-51). On November 12, 2013, Plaintiff turned herself in to the Jefferson County Sheriff's Department. (*Id.* at ¶ 46).

Plaintiff alleges that the Jefferson County District Attorney's Office assisted in the malicious prosecution against her. (*Id.* at ¶ 52). She claims that the District Attorney's Office delayed her prosecution by delaying testing of the bowl for more than three years. (*Id.* at ¶¶ 53-56). She characterizes the delay as "a direct indication that the District Attorney's [O]ffice delayed the prosecution of the Plaintiff in order to manufacture evidence against her." (*Id.* at ¶ 56).

On March 11, 2014, Defendant Springfield testified that he did not investigate other suspects for the poisoning because no one was home. (*Id.* at ¶ 26). He also testified that he seized the bowl because it was in plain view and eight to ten feet away from the road. (*Id.* at ¶ 27). In March 2017, Plaintiff was acquitted of animal cruelty. (*Id.* at ¶ 58).

**B. Procedural History**

In November 2015, Plaintiff filed this action against Defendants Finch, City of Homewood, and the Homewood Police Department. (Doc. # 1). In April 2016, the court stayed this action pending Plaintiff's state-court trial for animal cruelty. (Doc. # 26). In March 2017,

following Plaintiff's acquittal the court lifted its stay of the case. (Doc. # 42). When the court lifted the stay of this case, it also granted Plaintiff leave to amend her complaint. (*Id.*).

In March 2017, Plaintiff filed the First Amended Complaint currently before the court. (Doc. # 45). The First Amended Complaint presents several claims under 42 U.S.C. § 1983. First, Plaintiff claims that Defendants violated her rights under the Fourth and Fourteenth Amendments by conducting unreasonable searches and seizures on October 26, 2013. (*Id.* at ¶¶ 62, 66). Plaintiff also contends that the incident on October 26, 2013 violated her procedural due process and equal protection rights, in violation of the Fourteenth Amendment. (*Id.* at ¶ 66). Second, Plaintiff claims that the Homewood Police Department failed to properly train and supervise officers in "the making of proper arrests and the lawful use of force employed during the course of an arrest." (*Id.* at ¶ 71). Third, Plaintiff alleges that Defendant City of Homewood's custom and policy of training officers "to properly make arrests and to use a reasonable amount of force in the course of effecting an arrest" proximately caused officers to use excessive force against her. (*Id.* at ¶¶ 77-78). Fourth, Plaintiff alleges that the City of Homewood's policy described above proximately caused her false arrest.[1] (*Id.* at ¶ 80). Fifth, Plaintiff claims that Defendants falsely imprisoned her in violation of § 1983. (*Id.* at ¶ 82).

Plaintiff's First Amended Complaint contains four additional counts that fail to specify whether they are brought under state law or federal law. In her "Sixth Claim", Plaintiff alleges that Defendants abused the judicial process and maliciously prosecuted her. (*Id.* at ¶ 84). Her "Seventh Claim" appears to allege that Defendants committed the tort of outrage. (*Id.* at ¶ 86). Plaintiff's "Eighth Claim" alleges that Defendants City of Homewood, Jefferson County District Attorney's Office, and Jefferson County committed a variety of torts, including abuse of process,

---

[1] Notably, Plaintiff's "Third Claim" and "Fourth Claim" only reference the City of Homewood as the charged Defendant. Therefore, the court will only address whether the First Amended Complaint states plausible excessive force and false arrest claims against the City of Homewood.

4

false arrest, failure to train, false imprisonment, and slander. (*Id.* at ¶ 88). Finally, in the "Ninth Claim," Plaintiff claims that "Defendants" failed to properly train and supervise their employees. (*Id.* at ¶¶ 90-91).

Defendants City of Homewood, Finch, and Springfield have moved to dismiss the First Amended Complaint. (Doc. # 46). Alongside her opposition brief, Plaintiff filed a report from the Alabama Department of Forensic Sciences, a transcript from a probable cause hearing in her state-court criminal action, and a transcript from a motion hearing in that criminal action. (Docs. # 50-1, 50-2, 50-3). Defendants have asked the court to strike those exhibits. (Doc. # 52). Defendant Jefferson County District Attorney's Office also seeks dismissal of the First Amended Complaint. (Doc. # 60). In September 2017, Plaintiff requested leave to submit late briefs, and the court granted her leave to do so. (Docs. # 74, 78).

## II. Analysis of the Motion to Strike

The court has broad discretion in reviewing a motion to strike. *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1360 (S.D. Fla. 2009). Evidence submitted to support a motion can be challenged through a motion to strike, which is usually treated like a motion in limine. *Morris v. Precoat Metals*, 2013 WL 830868, at *2 (N.D. Ala. Mar. 4, 2013). Generally, motions to strike are disfavored by the courts. *See Blake v. Batmasian*, 2017 WL 743576, at *1 (S.D. Fla. Feb. 27, 2017). "Moreover, motions to strike are rarely granted absent a showing of prejudice." *Stephens v. Trust for Pub. Land*, 479 F. Supp. 2d 1341, 1346 (N.D. Ga. 2007).

In almost all circumstances, a court cannot consider evidence that is not attached to the complaint in deciding whether to dismiss a claim under Rule 12(b)(6). *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (explaining that an extrinsic

false arrest, failure to train, false imprisonment, and slander. (*Id.* at ¶ 88). Finally, in the "Ninth Claim," Plaintiff claims that "Defendants" failed to properly train and supervise their employees. (*Id.* at ¶¶ 90-91).

Defendants City of Homewood, Finch, and Springfield have moved to dismiss the First Amended Complaint. (Doc. # 46). Alongside her opposition brief, Plaintiff filed a report from the Alabama Department of Forensic Sciences, a transcript from a probable cause hearing in her state-court criminal action, and a transcript from a motion hearing in that criminal action. (Docs. # 50-1, 50-2, 50-3). Defendants have asked the court to strike those exhibits. (Doc. # 52). Defendant Jefferson County District Attorney's Office also seeks dismissal of the First Amended Complaint. (Doc. # 60). In September 2017, Plaintiff requested leave to submit late briefs, and the court granted her leave to do so. (Docs. # 74, 78).

## II. Analysis of the Motion to Strike

The court has broad discretion in reviewing a motion to strike. *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1360 (S.D. Fla. 2009). Evidence submitted to support a motion can be challenged through a motion to strike, which is usually treated like a motion in limine. *Morris v. Precoat Metals*, 2013 WL 830868, at *2 (N.D. Ala. Mar. 4, 2013). Generally, motions to strike are disfavored by the courts. *See Blake v. Batmasian*, 2017 WL 743576, at *1 (S.D. Fla. Feb. 27, 2017). "Moreover, motions to strike are rarely granted absent a showing of prejudice." *Stephens v. Trust for Pub. Land*, 479 F. Supp. 2d 1341, 1346 (N.D. Ga. 2007).

In almost all circumstances, a court cannot consider evidence that is not attached to the complaint in deciding whether to dismiss a claim under Rule 12(b)(6). *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (explaining that an extrinsic

document can only be considered in deciding a motion to dismiss if it is central to a plaintiff's claim and its authenticity is not challenged). Plaintiff's exhibits are not due to be considered at this stage of proceedings because she has offered no explanation for why they should be considered. Having said that, because Plaintiff's exhibits cannot be (and have not been) considered by the court in analyzing the Motions to Dismiss, the court finds that Defendants will not be prejudiced by leaving the submitted exhibits in the record. Therefore, Defendants' Motion to Strike (Doc. # 52) is due to be denied.

### III. Analysis of Motion for Hearing

Plaintiff has requested an ex parte hearing to discuss attorney-client privileged information with the court. (Doc. # 64). Plaintiff filed the motion after the court granted her attorney's Motion to Withdraw, which explained that a difference of opinion between Plaintiff and counsel precluded further representation. (Docs. # 62, 63). Because the court has granted Plaintiff's former attorney leave to withdraw, it concludes that Plaintiff's Motion for Ex Parte Hearing (Doc. # 64) is due to be denied as moot.

### IV. Standard of Review for the Motions to Dismiss

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most

favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## V. Analysis of Motions to Dismiss

Plaintiff presents nine counts against the Defendants in her First Amended Complaint. For the reasons explained below, the court concludes that her § 1983 claims against Defendant

City of Homewood are due to be dismissed for failure to plead an actionable policy or custom. Moreover, Plaintiff's other claims are due to be dismissed without prejudice because the amended complaint is a classic example of impermissible shotgun pleading.

### A. Plaintiff's § 1983 Claims Against Defendant City of Homewood are Due to be Dismissed for Failure to Plead a *Monell* Policy or Custom

Plaintiff raises § 1983 claims against Defendant City of Homewood based on its policies and its alleged failures to provide adequate training and supervision to Homewood Police Department officers. (*See* Doc. # 45 at ¶¶ 71, 77-78, 80). Plaintiff also alleges that the City of Homewood is responsible for the conduct of Defendants Finch and Springfield because its failures to "enforce the law of the State of Alabama and regulations pertaining to arrests and the use of force by police officers [created] within the Homewood Police Department an atmosphere of lawlessness." (*Id.* at ¶ 74). In response, Defendant City of Homewood argues that the First Amended Complaint presents no plausibly pled custom or policy that caused the alleged constitutional violations. (Doc. # 47 at 8-16).

It is axiomatic that a municipality, such as the City, is only liable under § 1983 when a municipal employee or agent undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 690. Accordingly, to hold a municipality liable, a plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the constitutional violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). A plaintiff may establish the existence of

a municipal "policy" by identifying "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). Plaintiff has not identified any officially promulgated policy, such as an ordinance or administrative order, that caused the alleged constitutional violations.[2] Therefore, the court proceeds to determine whether the First Amended Complaint presents a plausibly pled unofficial custom or practice.

The First Amended Complaint identifies two potential policies or customs to support Plaintiff's § 1983 claims: (1) the Homewood Police Department's failure to adequately train and supervise officers; and (2) the Homewood Police Department custom and policy of training officers "to properly make arrests and to use a reasonable amount of force." (Doc. # 45 at ¶¶ 71, 77). With regard to the first alleged policy or custom, the Supreme Court has recognized that, in limited circumstances, a decision to not train certain employees about avoiding certain constitutional violations can rise to an official government policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). "[T]o prove the existence of [a] purported policy or custom of deliberate indifference by the City, Plaintiff must show that the City had notice of a need to adequately train or supervise police officers but purposefully did nothing." *Dial v. City of Bessemer*, 2016 WL 3054728, at *5 (N.D. Ala. May 31, 2016). "[W]ithout notice of a need to

---

[2] To be sure, although Plaintiff's First Amended Complaint identifies a custom and policy of training police officers to properly make arrests and use reasonable amounts of force, Plaintiff has not alleged that this custom and policy was an officially promulgated directive. (*See* Doc. # 45 at ¶ 77).

train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). A municipality may be placed on notice of a need for additional training or supervision if it is aware of a pattern of constitutional violations or if the likelihood of a constitutional violation is so high that it is obvious additional training or supervision is needed. *Barr v. Gee*, 437 F. App'x 865, 874 (11th Cir. 2011) (citing *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009)).

Here, Plaintiff has not plausibly pled that the City had an unofficial custom or practice of inadequately training or supervising police officers. Plaintiff has not alleged any similar incident that would have placed City officials on notice of the need for additional training and supervision. Similarly, Plaintiff has not offered any allegations or argument to explain why additional training or supervision was obviously necessary. Indeed, the First Amended Complaint states that the City of Homewood had a policy of training officers to properly make arrests and use reasonable amounts of force. (Doc. # 45 at ¶ 77). Ultimately, the only allegations supporting a *Monell* claim relate to the investigation and arrest of Plaintiff herself. And, a single alleged constitutional violation, in isolation, is inadequate to support an inference of an official custom or policy tolerating such constitutional violations.[3] *Craig v. Floyd Cnty.,*

---

[3] Plaintiff's *pro se* opposition brief argues that her interactions with the Homewood Police Department constituted more than one incident. (Doc. # 77 at 4). Specifically, she explains that she reported an unconstitutional search to the Homewood Police Department in October 2013, but Defendant Finch continued to hide Defendant Springfield's misconduct in later reports. (*Id.*). The court is not convinced that the conduct of multiple officers in handling a single criminal complaint against Plaintiff and her related complaints against her accusers and investigators can be considered separate incidents for purposes of a *Monell* claim. *See Craig*, 643 F.3d at 1311-12 (holding that thirteen separate evaluations of a prisoner's injury over a nine-day period constituted one "incident" for purposes of a *Monell* claim). But, additionally, even if the court classified Defendants' course of conduct as more than one "incident", Plaintiff has not alleged what additional training or supervision the Homewood Police Department should have put into place. (*See* Doc. # 45 at ¶¶ 60-80). Therefore, any § 1983 claim against Defendant City of Homewood premised on its failure to adequately train or supervise officers is due to be dismissed for failure to allege what additional training or supervision should have been performed. *See Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1269 (S.D. Fla. 2015) (dismissing a § 1983 failure to train claim where the plaintiff failed to "identify a training program or policy and explain specifically how the City was negligent in implementing it").

*Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion)). *See also Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Therefore, Plaintiff has failed to plausibly plead a *Monell* claim based on a City custom or policy of inadequately training or supervising police officers.

In her "Third Claim," Plaintiff appears to allege that the City of Homewood's custom or policy of properly training its officers provides a basis for a *Monell* action against the City. This claim wholly misses the mark. A municipality cannot be held liable "just for instituting a facially constitutional policy." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. at 561-63. The policy presented in paragraph 77 of the First Amended Complaint is such a facially constitutional policy and, thus, provides no basis for a § 1983 claim.[4]

In conclusion, Plaintiff has presented no plausible custom or policy upon which a *Monell* claim can be maintained. Therefore, her § 1983 claims against the City of Homewood are due to be dismissed.

### B. Plaintiff's Claims Against Defendants Jefferson County District Attorney's Office, Jefferson County, Springfield, and Finch are Shotgun Claims

Defendants City of Homewood, Finch, and Springfield argue that the First Amended Complaint is a shotgun complaint that must be dismissed. (Doc. # 47 at 16-18). Specifically, they argue that the Fifth Claim, Sixth Claim, Seventh Claim, Eighth Claim, and Ninth Claim are alleged in a general fashion against all Defendants. (*Id.* at 17). Plaintiff responds that the First

---

[4] Plaintiff argues in her opposition brief that the actions of an official can be considered a municipal policy if the official is a "high level supervisor." (Doc. # 51 at 12). But, the court cannot categorize Finch's or Springfield's conduct as the conduct of a final policymaker because Plaintiff has not alleged that either officer was a policymaker or specified the position that they held in the Homewood Police Department. (Doc. # 45 at ¶¶ 4-5).

Amended Complaint is neither unintelligible nor confusing. (Doc. # 51 at 9). To the contrary, the court finds that all of the claims in the First Amended Complaint, except for the claims specifically raised against Defendant City of Homewood, are classic shotgun claims.

The Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted). District courts have the inherent authority to dismiss complaints on shotgun pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 2018 WL 268849, at *2 (11th Cir. Jan. 3, 2018). Nevertheless, the Eleventh Circuit has instructed district courts to allow repleading of a counseled shotgun complaint "if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 n. 113 (11th Cir. 2001)). Moreover, the court must grant a *pro se* plaintiff at least one chance to amend a complaint before dismissing an action with prejudice if a more carefully drafted complaint could state a claim. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Here, Plaintiff's First Amended Complaint -- filed by her former counsel -- contains several counts that can only be classified as shotgun counts. Counts One, Five, Six, Seven, and

Nine fail to allege which of the Defendants committed the tortious conduct at issue. (*See* Doc. # 45 at ¶¶ 66, 82, 84, 86, 90-91). *See Weiland*, 792 F.3d at 1323 (describing such pleadings as shotgun complaints). Although Count Eight specifies that the torts alleged therein were committed by Defendants City of Homewood, Jefferson County District Attorney's Office, and Jefferson County, it presents several causes of actions in a single count (*i.e.*, abuse of process, false arrest, failure to train, false imprisonment, and slander) and fails to specify which of the Defendants is liable for which tort. (*See* Doc. # 45 at ¶ 88). *See Weiland*, 792 F.3d at 1322-23. The court agrees with Defendants that these counts are due to be dismissed without prejudice as impermissible shotgun pleadings.[5]

The next question is whether Plaintiff should be given an opportunity to amend her pleadings. "When confronted with a shotgun pleading, the court is supposed to order repleading for a more definite statement of the claim." *Hickman v. Hickman*, 563 F. App'x 742, 744 (11th Cir. 2014). Accordingly, the court will allow Plaintiff **one final** opportunity to amend her Complaint. In doing so, the Second Amended Complaint shall comply with Federal Rules of Civil Procedure 8(a),[6] 8(d)(1),[7] 10(b),[8] and 11(b).[9] Each count in the Second Amended

---

[5] The court finds that Counts Two, Three, and Four contain § 1983 claims directed at Defendant City of Homewood. But, for the reasons explained above, the court concludes that any § 1983 claim against the City of Homewood is due to be dismissed for failure to plead an actionable policy or custom.

[6] Rule 8(a) **Claims for Relief**. A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

[7] Rule 8(d) **Pleading to Be Concise and Direct; Alternative Statements; Inconsistency**. (1) In General. Each allegation must be simple, concise, and direct. No technical form is required.

[8] Rule 10 **Form of Pleadings**. (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence ─ and each defense other than a denial ─ must be stated in a separate count or defense.

Complaint shall contain no more than one discrete claim for relief. The Second Amended Complaint must also contain allegations of fact which support each discrete claim. Specifically, Plaintiff must set forth each claim she is making against one or more of the Defendants separately, in a short, plain statement, containing allegations of fact and referencing the statute or law under which each separate claim is brought and the relief sought under each separate claim. Each count shall specify which of the Defendants is charged with the particular count. This will enable Defendants to properly respond to each separately numbered claim and allegation. Failure to file a Second Amended Complaint as directed within 21 days of the issuance of this Memorandum Opinion and the accompanying Order will result in this action being dismissed. Moreover, if Plaintiff files a Second Amended Complaint, the court will review it *sua sponte* and determine whether it is due to be dismissed on shotgun pleading grounds. *See Vibe Micro*, 2018 WL 268849, at *3; *Bryant*, 252 F.3d at 1163.

Because all of the claims against Defendant Jefferson County District Attorney's Office are due to be dismissed on shotgun pleading grounds, the court need not decide whether Plaintiff's claims against the District Attorney's Office are due to be dismissed on absolute immunity grounds. (*See* Doc. # 60). However, Plaintiff should be cognizant that the court is inclined to agree that the Jefferson County District Attorney's Office is entitled to absolute immunity from any state-law or § 1983 claim. *See Garrett v. Talladega Cnty. Drug & Violent*

---

[9] **Rule 11 Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions**. (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Crime Task Force*, 983 F. Supp. 2d 1369, 1376-78 (N.D. Ala. 2013) (explaining that a county district attorney's office is a state agency for purposes of Eleventh Amendment immunity and that a district attorney's office is not a suable entity under § 1983).

## VI.     Conclusion

For the reasons explained above, the court concludes that: (1) the Motion to Strike (Doc. # 52) is due to be denied; (2) the Motion for Ex Parte Hearing (Doc. # 64) is due to be denied as moot; and (3) the Motions to Dismiss (Docs. # 46, 60) are due to be granted, subject to Plaintiff's right to replead all claims except for her § 1983 claims against Defendant City of Homewood. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 22, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE